John H. Galloway, Jr., J.
The defendant, Jack I. Bergen, has brought five motions to dismiss five indictments returned against him, based on the court’s inspection of the Grand Jury’s minutes, upon the ground that the evidence before the Grand Jury was insufficient in law to warrant the finding of said indictments, or, in the alternative, for orders granting defendant leave to inspect the minutes.
The motions are directed against indictments numbered 20416, 20417, 20418, 20419 and 20420, which were filed in this court on October 18, 1962, and which charge this defendant, in 12 counts, with the commission of the following crimes: 1. One count of perjury in the first degree; 2. One count of offering false or forged instruments to be filed or recorded, in violation of section 2051 of the Penal Law; 3. Three counts of grand larceny, second degree and one count of petit larceny, by false and fraudulent representations and pretenses; 4. Two counts of forgery, third degree; and 5. Four counts of conspiracy (Penal Law, § 580) to commit the crimes of perjury, forgery, larceny and violation of section 2051 of the Penal Law.
In brief, defendant’s grounds for dismissal are that the evidence before the Grand Jury was insufficient in law to sustain the elements of the substantive crimes charged.
*877 It appears that the charges herein arose from alleged unlawful rent increases obtained from the New York Temporary Housing Rent Commission by this defendant as one of the owners or managers of a rent-controlled apartment house property in Mount Vernon, New York, by falsely stating, or by aiding, abetting and inducing the false statement, in a verified application, that he and they incurred stated expenses for the installation of certain kitchen equipment, which expenses were in excess of the actual cost and consequently false.
The testimony before the Grand Jury indicates that Bergen, as owner or manager of the rent-controlled residential property in Mount Vernon, submitted, or aided and abetted in the submission of, for each apartment involved, an application for an increase in maximum rent pursuant to section 4 of the Emergency Housing Rent Control Law (L. 1946, ch. 274, as amd.) and section 33 of the State Rent and Eviction Regulations. Such application was required by the regulations to be verified. Bergen signed such an application and also notarized other such applications signed by his co-owners. As required by the Rent Commission, defendant inserted in the applications a description of and the cost of the improvements, which was the basis for the rental increase sought in such applications. Defendant falsely stated the expenditure for such improvement, and, as required by the commission, tendered as evidence of such expenditure, falsely inflated bills.
The Rent Commission thereupon granted increases in the maximum rents of the apartments involved, the amounts of such increases being predicated upon and proportioned to said false statements of expenditure. The result was that each tenant involved was required to pay a higher maximum ‘ ‘ legal ’ ’ rent than he would have had to pay if the Rent Commission had not relied upon the false statement and inflated bills submitted by the defendant and his co-owners.
We will consider defendant’s contentions with respect to each of the five categories of crime with which he is charged:
I. That the count of perjury, first degree, is based on facts alleged which do not constitute (and the evidence before the Grand Jury could not have sustained as) the crime charged as a matter of law. He argues that he did not himself make the false statement under oath alleged in the indictment, since he only performed the ministerial act of notarizing the verification of his co-owner, Paul Gould. But Bergen is charged with more than having notarized Gould’s verification. He is charged with having acted in concert with and aided, abetted and induced Gould in the making and filing of the application containing the *878 false statement of cost of the new kitchen cabinets. The evidence before the Grand Jury sustains the commission of both alleged acts. Under section 2 of the Penal Law, a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, or who directly or indirectly counsels or induces another to commit a crime, is a principal.
The essential element of the crime of perjury is the making of a false statement under oath (Penal Law, §§ 1620,1620-a). Here the evidence before the Grand Jury sustains the charge of first degree perjury of Paul Gould by virtue of his verification, before defendant as a notary public, of his false application for rent increase, and of defendant’s action in concert with Gould in aid of the procurement thereof.
Defendant argues further that the alleged perjury took place, if at all, in Bronx County (wherein the venue of the Gould verification is laid), rather than in Westchester County, as alleged in the indictment, and therefore this county is without jurisdiction to prosecute defendant for the crime charged. But it appears that the false application was filed in the local office of the Bent Commission in White Plains, in this county. The making of a deposition or certificate is deemed complete, within the perjury article (Penal Law, art. 158), from the time when it is delivered by the defendant to any other person with intent that it be uttered or published as true (Penal Law, § 1625).
It appears from the minutes that delivery of the perjured application was in Westchester County at the White Plains office of the Bent Commission, where obviously it was intended to be uttered as true and to induce favorable action by the commission. In any event, if the perjurious act be deemed to have been committed partly in Bronx County, in which the oath was administered, and partly in Westchester County, in which the perjurious instrument was delivered and uttered, the jurisdiction is in either county (Code Grim. Pro., § 134).
II. That the count of offering false or forged instruments to be filed, in violation of section 2051 of the Penal Law, is based on facts which do not constitute the crime charged as a matter of law. The instruments referred to are the applications for increased rents filed with the Bent Commission by the defendant and his co-owners, and to which were attached the alleged fraudulently inflated bills for the cost of the improvements.
Section 2051 of the Penal Law provides: “A person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed or registered *879 or recorded under any law of this state or of the United States, is guilty of felony.”
Defendant urges that this section has no application to “ a genuine document which may contain false information”, but applies only to a forged instrument, that is, that it applies to the genuineness of the instrument and not to the statements contained therein. Although we have some doubts about the genuineness of an instrument which contains a false statement, we must agree with the defendant, in the light of the authorities upon which he relies, that section 2051 is inapplicable to the rent applications form filed or caused to be filed by defendant in this instance. (See People v. Levitas, 40 Misc 2d 331, 335; People ex rel. Fleischman v. Zappello, 111 N. Y. S. 2d 317, 318; People v. Canal, N. Y. L. J., March 12, 1963, p. 16, col. 6 [Schweitzer, J.]); and People v. Cantor, 134 Misc. 357.)
The People urge that the statute applies in its words to both false and forged instruments and seek to distinguish the cited cases on their facts as not controlling. We think their grounds of distinction are not valid. They also rely upon the decision of the Appellate Division, Second Department, in People v. Sullivan (275 App. Div. 956, affd. 300 N. Y. 696, cert. den. 340 U. S. 815) which affirmed a conviction under section 2051 for the offering of a false and forged instrument to be filed in the office of the County Clerk of Westchester County. There the defendant signed a fictitious name to a certificate for conduct of business under an assumed name, for which he was also charged with and convicted of forgery in the second degree and of forgery in the second degree in uttering such forged instrument.
We are of the opinion that the basis of the affirmance of the conviction under section 2051 was the lack of genuineness of the instrument by virtue of its forged character due to the use of the fictitious name signature. Presumably the fictitious name appeared in the body of the certificate, but it is far from clear that there would have been an affirmance in the absence of the fictitious signature. The Sullivan decision, therefore, does not sustain the People’s position, and we conclude that the filing of the false rent applications did not constitute a violation of section 2051 of the Penal Law. The second count of Indictment No. 20416 is accordingly dismissed.
III. That the four counts of larceny by fraud (by false and fraudulent representations made to the commission and to the tenants stated therein) are based upon facts which do not constitute the crimes charged as a matter of law. In these counts defendant is charged with stealing money in the form of rents collected from named tenants in excess of the rents they would *880 have paid but for their reliance upon and compliance with the orders of the Rent Commission issued by it in reliance upon the false and fraudulent applications for increases in maximum rents filed by defendant in execution of a common scheme and plan with the other defendants, including one or more of his co-owners, to thereby defraud such tenants.
Defendant assumes the evidence before the Grand Jury will show that defendant did not sign the rent applications and concludes therefore that he could not have made any representations to the tenants and cannot be charged with larceny by false pretenses. The fact is the evidence establishes that this defendant signed and filed at least one of such rent applications and that his co-owners signed and filed other such applications, in connection with which this defendant is charged with having acted in concert in the execution of a common scheme or plan. In this latter connection defendant is charged as a principal in the commission of the crime charged (Penal Law, § 2), and the evidence tends to sustain the charges. It appears therefrom that defendant either solicited or induced various tenants to consent to the installation of new kitchen cabinets and their signing of the necessary forms for the Rent Commission; and further, that the contractor’s bills for the improvements, including those containing the actual prices paid by the owners and those containing the inflated prices or costs, were made out to Bergen or to the partnership owner in his care, the inflated bills being those filed with the commission in support of the rent increase applications.
Defendant assumes and contends further, that the Grand Jury testimony will disclose that the tenants did not part with any property in reliance upon any representations made by defendant, because the representations, if false, were made to the Rent Commission and not to the tenants; and that in any event the tenants paid the increased rents in obedience to the mandate of the commission and not in reliance upon any representations made by defendant.
Defendant argues that the probable testimony before the Grand Jury could not have established, on the facts alleged, the essential elements of larceny by false pretenses, that is, criminal intent, false representation knowingly made, and reliance upon such false pretense by the party thereby deprived of his property.
The minutes here disclose that the defendant and his co-owners submitted the alleged false costs of improvement information to the Rent Commission; that based upon such false information *881 the commission issued orders increasing the ‘ ‘ maximum legal rent ” to be paid by the tenants; and that in compliance with such orders the tenants paid such increased rents, which were in excess of what they would have been if the commission had been given the true and correct information.
In our opinion, the tenants in question paid the excess increase in rents and thus parted with their property (money) in reliance upon the false statements made by the defendant and his co-owners to the Bent Commission. Under the rent control law, the tenants and their landlords were not free to negotiate and adjust rents by direct action — the Bent Commission became the interceding agent for the tenant, who became virtually the ward of the commission in the tenant-landlord relationship. It is clear from the evidence that defendant and his co-owner defendants had deliberately set out to exploit this pattern of protectorship, by means of the falsely inflated bill device supporting his and their applications for increases in rents.
Thus, by defrauding their tenants’ agent and protector, they accomplished their primary criminal objective of defrauding their tenants. Defendant knew that if he and his co-owners sent false bills to the Bent Commission it would act upon their applications as the assertion of honest claims against their tenants for increased rents. He further knew that if, upon review of the applications and the false supporting documents, the commission approved same in reliance upon such false representations, it would do what he and they intended it to do, viz., issue the orders for increases in the maximum legal rents, with which orders the tenants would comply; and indeed they did, and thereby parted with property they would not have otherwise parted with.
As the Court of Appeals said (per Finch, J.) in People ex rel. Phelps v. Court of Oyer and Terminer (83 N. Y. 436, 455): “ This consequence of Genet’s act he both clearly foresaw and actually intended. It resulted from his original act, and he meant that it should so result. The comptroller and auditor, public officers though they were, became through his act and deception, the innocent agents of his fraud upon the mayor.”
In that case the defendant Genet was charged with larceny by false pretenses from the Mayor and Corporation of the City of New York by submitting a fraudulent bill for iron work to an independent Board of Commissioners who were building the Harlem Court House. After certification by the Commissioners as to the correctness of the claim, it was passed on to the Comptroller and Auditor for their approval and thence to the Mayor, *882 who signed the warrant authorizing payment. There was no direct proof that defendant made any representations to the Mayor.
In affirming the conviction Judge Finch stated further for a unanimous court (pp. 452-453): “ That it went through other hands can make no difference, nor that the intermediate agencies were independent officers who might have stopped its progress.” (Citing cases.)
We think that the ratio decidendi of People ex rel. Phelps v. Court (affd. sub nom. People v. Genet, 19 Hun 91) is applicable in the instant case. It is to be observed that here, according to the evidence before the Grand Jury, the tenants were required to and did either acknowledge the installation of the improvements claimed by the landlords or state that they consented to such installation, as a component part of the alleged false application forms, prior to filing with the commission. In our opinion it follows that the tenants’ reliance upon the defendant’s false representations to their intermediary, the Bent Commission, was no less in reality and reason the fraudulent result of defendant’s act than if the false bills had been presented direct to the tenants by the defendant. We conclude that there was sufficient evidence before the Grand Jury to sustain the counts of larceny by false pretenses.
We are aware of the contrary conclusion reached in a similar fact situation by Mr. Justice Schweitzer, Supreme Court, Bronx County, in People v. Levitas (40 Misc 2d 331, 334-335, supra) wherein he dismissed similar counts of larceny by false pretenses as insufficient in law. Judge Schweitzer held that the tenants who wrongfully paid higher maximum rents did so in obedience to the mandate of the Bent Commission and not in reliance upon the false representations of the defendant landlords.
Defendant Bergen relies heavily on the Levitas case, and on the cases therein cited. We most respectfully regret that we (though a court of concurrent jurisdiction with the Supreme Court only in matters criminal) feel unable to adopt the learned Justice’s views on the point, believing as we do that the authorities relied on there are distinguishable on their facts from those in Levitas, and therefore not in point there nor here. People v. Lobel (298 N. Y. 243, 254, 255) involved an outright theft and not a larceny by false pretense; in People v. Miller (169 N. Y. 339), People v. Williams (135 Misc. 564, 565), People v. Cerrato (99 Misc. 256) and People v. Hart (35 Misc. 182, 186) the false representations were either promissory or not material. In People v. Hubbard (10 A D 2d 735) defendant was entitled by *883 statute to welfare moneys regardless of Ms false representations as to Ms marital status, so that his false pretense was not material to the result he sought to achieve thereby.
Nor, in our judgment, is Denkensohn v. Ridgeway Apts. (13 Misc 2d 389 [App. Term, 2d Dept.]) in point. That case, upon which defendant here relies, as did the court in Levitas (supra) was a civil suit by tenants against their landlords for recovery of overpayments of rent which were made in obedience to orders of the Rent Commission which were later revoked for fraud practiced on the commission by the landlords in connection with a so-called “ hardship ” application for increased rents.
The court stated that the cause of action for fraud perpetrated on the Rent Commission in securing rent increases was legally insufficient; that no such cause of action was created by the emergency rent statute, and none existed at common law; and that the misrepresentations were not made to plaintiffs, the tenants, nor did they rely upon them. We believe that Denkensohn is distinguishable on its facts from the case at bar, particularly in that there the landlord’s application was a “ hardship ” application and required no tenant participation before the commission as. was required in the case at bar. Furthermore, it does not follow, from the lack of a civil right of action under the rent act or at common law in favor of a tenant against the landlord, for overpaid rents, that the elements of larceny by false pretenses (a criminal offense), do not exist as against the landlord.
IV. That the two counts of forgery in the third degree (Indictment No. 20417) are based upon facts alleged which do not constitute the crimes charged as a matter of law. These counts allege that defendant aided, abetted and induced the other defendants, including his co-owners, to falsify, alter and forge, with intent to defraud and conceal a larceny of money, and uttered, a record and writing pertaining to the business of the Groldleaf Sales Corporation, viz., an invoice covering the installation of kitchen cabinets in a named apartment in defendant’s apartment house in Mount Vernon.
Defendant argues that even if the invoice in question were falsely inflated prior to filing, this act could not be construed as an act of forgery within section 880 of the Penal Law, which does not apply to the making of a genuine instrument containing false information. He also argues that one cannot be guilty of a forgery of one’s own instrument, and the defendant’s codefendants Goldleaf and Nissenbaum were employees of the corporation in question. Defendant also argues that this defendant did not falsify the invoice in question and could not there *884 fore be convicted of forgery, since the elements of the crime charged do not apply to one who induces another to forge or alter an instrument.
The latter argument is without merit, since defendant is charged with aiding, abetting and inducing the other defendants to falsify, alter and forge said invoice, with intent to defraud. Pursuant to section 2 of the Penal Law, such a person who aids and abets in the commission of a crime is a principal in the commission of such crime.
Nor is there merit to the arguments: 1. That, since the definition of a forged instrument in section 880 of the Penal Law, encompasses only the false making and counterfeiting of a genuine instrument, or the alteration of a genuine instrument, a genuine instrument containing a false statement is not a forgery under that section; and 2. That one cannot forge his own instrument and therefore the false invoice prepared by employees of the G-oldleaf Sales Corporation did not constitute a forgery as charged.
As to the first-numbered argument, subdivision 1 of section 889 of the Penal Law, defining forgery in the third degree, provides : “ A person who: 1. Being an officer or in the employment of a corporation * * * falsifies * * * any * * * records, or other writing, belonging to or appertaining to the business of the corporation * * * Is guilty of forgery in the third degree.”
The plain language of the statute encompasses the acts of employees or officers of a corporation falsifying the business records or writings pertaining to the corporation’s business.
As to the second-numbered argument, section 880 of the Penal Law provides that the expressions “forge”, “forged” and ‘1 forging ” “ include false making, counterfeiting and the alteration * * * of a genuine instrument * * * the false making or counterfeiting of the signature, of a party or witness ”.
The question is whether the Legislature intended any fictitious instruments other than those bearing falsely made or counterfeited signatures to come within the crime of forgery.
In People v. Berman (197 N. Y. S. 2d 346, 351, 353) it was held that the term “ false making ” as used in section 880, is to be construed as used in the disjunctive sense and as intended to have meaning in and of itself apart from the phrase “ genuine instrument ’ ’, and that the Legislature intended certain fictitious instruments, other than those with falsely made or counterfeited signatures, to be the subjects of forgery. It was also held that *885 the expression “false making” as it appears in section 880 includes a fictitiously made instrument.
In our opinion an instrument or writing which contains a false material statement as to the price paid for an improvement, as was here the case, is a fictitious instrument and is encompassed by the phrase “ false making ” in section 880 defining forgery, and by the term “falsifies” in subdivision 1 of section 889 defining forgery in the third degree. We conclude that the invoice or instrument here involved falls directly within subdivision 1 of section 889 and that the acts charged constitute the crime of forgery in the third degree. From our inspection of the minutes, we find there was ample evidence before the G-rand Jury of the forgery of the instrument and of the uttering of such forged instrument to sustain the charge.
Finally, as to the forgery counts, defendant surmises that the only evidence of his complicity in these forgeries was the uncorroborated accomplice testimony of his codefendants Goldleaf and Nissenbaum, and urges that such testimony is legally insufficient. The fact of the matter is that their testimony on the subject is adequately corroborated by other and independent evidence tending to connect this defendant with the commission of the forgeries charged.
V. That the four counts charging defendant with the crime of conspiracy to commit the crimes of perjury, offering false or forged instruments for filing, larceny and forgery, are based on facts which are legally insufficient to constitute the crimes charged.
Defendant contends: 1. That the crimes he allegedly conspired with others to commit being insufficiently established as a matter of law, the conspiracy counts based on his having so conspired are necessarily also without factual and legal support; and 2. That the uncorroborated accomplice testimony on which these counts rest was legally incompetent to sustain the conspiracy counts.
As to the first contention, the sufficiency in law of the counts charging perjury, larceny by false pretense and forgery having been herein sustained, the legal sufficiency of the conspiracy counts is likewise sustained as to those three categories of crime charged. As to the second count of Indictment No. 20416, charging violation of section 2051 of the Penal Law, we, having determined that count to be insufficient in law, must necessarily determine the conspiracy counts likewise insufficient in law and they must be dismissed with respect to that crime only.
As to the second contention that the accomplice testimony against defendant was uncorroborated and therefore legally *886 incompetent, we repeat what we have said above, viz., that such testimony was corroborated by other and independent evidence tending to connect this defendant with the commission of the conspiracies charged.
We find no merit in defendant’s final contention that the conspiracies, if any, took place in Bronx County where defendant had his office, and that the indictments charging conspiracy are therefore jurisdictionally defective. It is clear from the indictments and from the evidence before the Grand Jury that the overt acts in furtherance of the conspiracies charged were taken both in Bronx and Westchester Counties, and also that the conspiracies continued up to about July 1,1961 when defendant and his co-owners conveyed title to the apartment property here involved.
Pursuant to section 134 of the Code of Criminal Procedure, when a crime is committed partly in one county and partly in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county.
The court having inspected the minutes of the Grand Jury, and in view of the several determinations herein made, defendant’s motions to inspect the minutes are denied. His motions to dismiss the indictments as insufficient in law are likewise denied, except that his motions to dismiss are granted as to the second count of Indictment No. 20416 (violation of Penal Law, § 2051) and also as to the conspiracy counts in Indictments Nos. 20416, 20418, 20419 and 20420, to the extent only that such counts charge conspiracy to commit the crime of offering false or forged instruments for filing or recording in violation of section 2051 of the Penal Law.