■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GILBERT GOTTLIEB and 220 CRESCENT, INC., Appellants.— Consolidated appeals from two judgments of the County Court, Westchester County, one as to defendant 220 Crescent, Inc., rendered January 3, 1973, and the other as to defendant Gilbert Gottlieb, rendered May 9, 1973, convicting them, respectively, of offering a false instrument for filing in the first degree (Penal Law, § 175.35), upon a jury verdict at a joint trial, and imposing sentence. Judgments affirmed. Undoubtedly the term "instrument" has been given a narrow construction so as to exclude writings such as applications for an automobile operator's license and for government employment (*People* v. *Sansanese*, 17 N Y 2d 302; *People* v. *Kirk*, 62 Misc 2d 1078, affd. 34 A D 2d 738). We believe, however, that an application for a certificate of occupancy, such as is involved in the present case, is of sufficient importance to be considered an "instrument" for the purposes of section 175.35 of the Penal Law (see Penal Law, § 170.00). Such a holding does not extend penal responsibility beyond the fair scope of the statutory mandate of section 175.35 (see *People* v. *Wood*, 8 N Y 2d 48, 51). The crucial factual issue in this case concerns defendant Gottlieb's intent at the time he filed the application for the certificate of occupancy. From the proof adduced at the trial it is clear that he was aware of the material misrepresentation contained in the application and that it was his intent to deceive the Yonkers Building Department officials thereby. There was more than ample proof that at the time the application for occupancy of the number of permitted apartments was offered by Gottlieb for filing, preparation and construction of more than the permitted number of apartments were well under way. Thus, the elements of the crime set forth in section 175.35 of the Penal Law were sufficiently proved. The verdict as to Gottlieb was not legally defective. The record discloses that following the jury poll, during which certain reservations as to the guilty verdict had been expressed by two jurors, all of the jurors unequivocally expressed their assent to the verdict. Thus, no further jury deliberation was required (see CPL 310.80). Christ, Brennan, Benjamin and Munder, JJ., concur; Gulotta, P. J., dissents and votes to reverse the judgments and dismiss the indictment, with the following memorandum: The corporate defendant, 220 Crescent, Inc., and its secretary, Gilbert Gottlieb, appeal respectively from two judgments convicting them of offering a false instrument for filing in the first degree, in violation of section 175.35 of the Penal Law, a class E felony, and fining each of them $2,500. The "instrument" involved is an application for a certificate of occupancy (C. O.) submitted to the Building Department of the City of Yonkers on September 26, 1969 in connection with an apartment com-

plex. After receiving a zoning variance in 1968 permitting construction of an 84-unit apartment house at 220 Crescent Place, Yonkers, the corporation filed for and received a building permit. The floor plan submitted with the application for the building permit showed 14 apartments on each of six floors. On September 26, 1969 a temporary C. O. permitting partial use of the uncompleted building covering 28 apartments was issued and on the same day Gottlieb applied for a permanent C. O. The C. O. was issued on November 5, 1969 allowing occupancy of the 84 apartment units and the use of the ground floor for lobby, storage, utilities and general uses. It appears that the original construction contract was let for the 84 units. It was not until the building had reached the state for rough plumbing and electrical work (in January or February, 1969) that a decision was made to add nine apartments on the ground floor, apparently on the assumption that approval could be obtained for these additional units. The plumbing and gas lines for the 84 apartments were installed in October, 1968. The plumbing for the nine additional units was not installed until June, 1969. Ample remedies exist for dealing with an occupancy of a building which does not conform to the C. O. These include an injunction against the use, or the more expeditious and more usual remedy of revocation of the C. O. followed by a summons for the unlawful use in violation of the ordinance, or even an immediate prosecution for violation of the C. O. In this case, instead, a prosecution was initiated under section 175.35 of the Penal Law, which reads as follows: " Offering a false instrument for filing in the first degree. A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision thereof, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant. Offering a false instrument for filing in the first degree is a class E felony." The basic elements of any fraud are (1) a material misrepresentation of a fact, (2) that the representation was known by the maker to be false, (3) that he intended to deceive, (4) that there was reliance on the representation and (5) that the person relying upon the false statement suffered damage. There is missing from this case any element of deception. True, it was not revealed that nine additional units were being built in the lobby, but no C. O. was requested for these. Nor can it be said that the municipality relied on this application and issued a C. O. on the basis of its contents. Common practice belies any such contention. The application, in practice, serves merely as a request for a C. O. which is always followed by an inspection. It is on the basis of the building inspector's examination and report that the C. O. is issued. Furthermore, it can hardly be said that the City of Yonkers suffered damage as that term is generally understood. It seems clear that there was no calculated effort to deceive the city and it was not deceived, since a Board of Fire Underwriters certificate showing 93 electric meters was filed with the Building Department on September 12, 1969. In addition, the 1969 application for a C. O. listed 92 off-street automobile parking spaces, the ordinance requiring one for each dwelling unit. A Building Department inspection was made on September 26, 1969 in connection with the issuance of the temporary C. O. and there also were regular inspections at least once a month during the year it took to construct the building. Under the circumstances, the city, through its employees, could hardly have been unaware of defendants' vio-

lation of the zoning ordinance, yet defendants received no notices of violation with respect to these nine apartments. Indicative of the fact that this was no purposeful scheme of deception is the nature of the act itself committed by defendants. They applied for a C. O. for the correct number of apartments they are entitled to have (i.e., 84) and not the 93 apartments they actually had, so the "deception" accomplished nothing. From a common-sense point of view, to accomplish any worthwhile result it would have been necessary for them to practice a different type of deception, i.e., one which would have resulted in a C. O. for 93 apartments. As it was, they merely had an unlawful occupancy of the ground floor, much like the case of a person building a one-family house in a one-family zone, getting a C. O. for it and then altering it to allow for two-family occupancy. The statute is silent as to what kind of instruments the Legislature had in mind. I regard as unwarranted the adoption by the trial court of the sweeping definition of a "written instrument" found in section 170.00 of the Penal Law, which deals with forgery, and its application to article 175, which deals with false written statements. Furthermore, the definition adopted does not accord with the judicial interpretation placed on section 2051 of the former Penal Law, the predecessor of section 175.35. Thus, in *People* v. *Sansanese* (17 N Y 2d 302) section 2051 was held not to apply to an application for a driver's license and in *People* v. *Gould* (41 Misc 2d 875) and *People* v. *Levitas* (40 Misc 2d 331) it was held that applications for increases in maximum rents were not *instruments* under section 2051. In *People* v. *Kirk* (62 Misc 2d 1078, affd. 34 A D 2d 738) an application for government employment was held to be outside the purview of the statute, as was a notice of mechanic's lien in *People* v. *Cantor* (134 Misc. 357) and an auto registration application in *People on Complaint of Fleischman* v. *Zappello* (111 N. Y. S. 2d 317). (Also, cf., *People* v. *Clurman*, 290 N. Y. 242.) At the time of these cases there was also a definition of a written instrument in section 880 of the former Penal Law, which dealt with forgery, but it was not transported to former article 184, which dealt with "Records and Documents", for the purpose of deciding what were "instruments" under the latter article. *People* v. *Sansanese* (17 N Y 2d 302, 306, *supra*) involved a deliberate attempt by the defendant to procure a driver's license in the name of his deceased father to avoid disclosing his own criminal record. In deciding what the word "instrument" connoted, the court said: "An instrument has been defined as a 'formal or legal document in writing, such as a contract, deed, will, bond, or lease' (Black's Law Dictionary [4th ed., 1951, p. 941]), and as a 'legal document (as a deed, will ° ° ° ) evidencing legal rights or duties, esp. of one party to another' (Webster, Third New Int. Dictionary [1961], p. 1172). While on the one hand we must not be overly technical in interpreting penal provisions, on the other hand 'Penal responsibility * * * cannot be extended beyond the fair scope of the statutory mandate'. (*People* v. *Wood*, 8 N Y 2d 48, 51 [1960]; Penal Law, § 21.) In accordance with the above definitions and legal precepts of construction, we conclude that a writing such as an application for an operator's license is not an 'instrument' as the term is used in section 2051." Under the construction placed upon section 175.35 in the present case, where the trial court charged the jury that "any impairment of the administration of municipal functions which would include the administration of building and zoning regulations" would constitute defrauding the City of Yonkers, the most innocuous misstatement of any sort in a filed paper, from an application for a dog license to an application for a marriage license, could be the basis for

a conviction of this felony, irrespective of reliance or damage by reason of the misstatement. In my opinion, such a result was not intended by the Legislature. It is significant, I think, that, when the jury returned to the court and asked for a legal definition of intent to defraud, among other things the court repeated its admonition that no loss was necessary and that any impairment of municipal functions would suffice. Aside from these questions of law directed to the section involved, there is another deficiency which should invalidate the judgments of conviction. After some six hours of deliberation the court was advised that a verdict had been reached. The foreman announced that they had found both defendants guilty and the jury was polled at the request of defense counsel. When asked whether that was his verdict as to defendant Gottlieb, juror number 7 said, "Guilty with reservations," and juror number 12 answered, "Yes, with a question as to intent to defraud." Without further instructions and without leaving the jury box, they were immediately repolled and then all indicated assent. While the responses made by the two jurors may not have been negative votes *mandating* a rejection of the verdict and an ordering of further deliberations (CPL 310.80), neither can it be said that they were positive votes of guilt, especially where intent to defraud was one of the basic elements of the crime charged. The statements are indicative of the fact that at least two jurors were not convinced beyond a reasonable doubt. Under the circumstances, the verdict was equivocal at best and the trial court had the duty to request the jury to resume its deliberations. Were it not my opinion that the indictment is legally insufficient, I would reverse as to Gottlieb and order a new trial on this ground. For the reasons stated above, I would reverse the convictions and dismiss the indictment.