UNITED STATES of America ex rel. John BLADES, Petitioner,

v.

Hon. Gerald BELDOCK, a Justice of the Supreme Court of the State of New York, County of Kings, the Supreme Court of the State of New York, County of Kings, and Hon. Eugene Gold, District Attorney, County of Kings, Respondents.

No. 78 C 2378.

United States District Court, E. D. New York.

Nov. 15, 1978.

Leon Polsky, The Legal Aid Society, New York City by Valerie C. West, Staff Counsel, Brooklyn, for petitioner.

Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y. by Barbara L. Linzer, Asst. Dist. Atty., Brooklyn, N. Y., for respondents.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner seeks a writ of habeas corpus and a stay of an allegedly imminent retrial of a criminal action against him in the Supreme Court, Kings County, on the ground that such retrial would violate his constitutional right not "to be twice put in jeopardy" for the same offense and his constitutional right to due process of law under the Fifth Amendment to the United States Constitution.

In an indictment returned in 1977, petitioner was charged with the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees and on January 31, 1978, a jury trial commenced. At the trial the People presented evidence that petitioner sold a quantity of cocaine to an undercover police officer and petitioner presented four alibi witnesses.

The jury commenced its deliberations at approximately 2:00 p. m. on February 20, 1978, and at 5:00 p. m. it advised the Court that it was hopelessly deadlocked whereupon the Court (Beldock, J.) delivered a "modified Allen charge" and sent the jury back for further deliberations. The jury was sequestered overnight and deliberated during the entire day on February 21 until 4:30 p. m. at which time it sent the Court a second note indicating that it was hopelessly deadlocked and again the Court delivered a "modified Allen charge" and sent the jury back for further deliberations.

A communication written at 6:05 p. m. and apparently revealed in open court after dinner at approximately 8:00 p. m. indicated that the jury had reached a verdict. In open court the foreman announced that the jury had found the petitioner not guilty on all counts but juror number eight, Miss Janice E. Ferguson, apparently shook her head negatively throughout the announcement which caused the prosecutor to request that the jury be polled pursuant to New York Criminal Procedure Law § 310.-80. Upon being polled Miss Ferguson stated that the announced verdict was not her verdict and then volunteered the following pertinent comments:

"MISS FERGUSON: I will tell you what happened. I was badgered personally.

MR. FASULO: Judge—

MISS FERGUSON: Do you want to hear what I have to say? I think the system is good as far as it goes. After a certain number of hours of deliberation we in good faith can go over the testimony. But after a certain point I found I was being badgered. It becomes personal, very vicious. Finally I got to the point where I frankly said sarcastically whatever you want me to say, count me in. If you want me to say this, count me in, knowing full well they knew it was sarcastic. And a vote was taken, fine. But if polled individually, I am not going to lie here."

On hearing this, the Court stated that it felt it had "no choice but to discharge this jury at this point." Defense counsel objected and at a side bar conference requested that the jury be sent back for further deliberations claiming that the jury had not indicated it was hopelessly deadlocked. Thereupon the Court asked the foreman whether there was any point "to my sending you back inside for further discussion of this matter in any way" to which the foreman replied "none whatsoever". Under persistent pressure from the defense counsel the Court then said "so there will be no mistakes, go back into the jury room and discuss among yourselves" at which point the jurors requested that they be polled on this question. The Court then asked each juror whether there was "any way you can arrive at any kind of a verdict" and each juror replied in the negative. Only after all of this colloquy did the Court declare a mistrial and discharge the jury.

It is also significant to note that in the Court's colloquy with Miss Ferguson she

stated that she had "made it very clear at the time that I was going along because I had been badgered and brow beaten. That was very clear to every other member in the jury room. They had me in tears. I still held on . . ."

Petitioner then sought to bar commencement of a second trial in an Article 78 proceeding in the Appellate Division, Second Department, claiming double jeopardy and this application was denied on June 16, 1978, by the Appellate Division, without opinion. Thereafter, petitioner sought permission to appeal to the New York Court of Appeals and leave to appeal was denied on September 21, 1978.

Petitioner claims that double jeopardy arises in this case because the trial court failed to comply with the provisions of § 310.80 of the New York Criminal Procedure Law pertaining to the recording of the verdict and polling of the jury which provides as follows:

"After a verdict has been rendered, it must be recorded on the minutes and read to the jury, and the jurors must be collectively asked whether such is their verdict. Even though no juror makes any declaration in the negative, the jury must, if either party makes such an application, be polled and each juror separately asked whether the verdict announced by the foreman is in all respects his verdict. If upon either the collective or the separate inquiry any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation. If no disagreement is expressed, the jury must be discharged from the case, except as otherwise provided in sections 125.30 and 125.-35 of the penal law."

His argument is that the foregoing statute conclusively establishes that there was no "manifest necessity" for the declaration of a mistrial under the rule established in the *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824), and followed consistently by the United States Supreme Court in *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *Green v. United States,*

355 U.S. 184, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Illinois v. Somerville,* 410 U.S. 458 (1973); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), since such statute specifically requires the trial court to "direct the jury to resume its deliberation" if a juror has indicated that an announced verdict is not his or her verdict.

Petitioner further argues that since § 310.80 of the New York Criminal Procedure Law leaves the trial judge with no discretion to declare a mistrial, it was necessarily an abuse of discretion by the trial court to do so.

In the *Perez* case, *supra,* the Supreme Court said (9 Wheat. at 580, 6 L.Ed. 165):

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

It is clear from a reading of this opinion that the Supreme Court left the declaration of a mistrial in the "sound discretion" of the trial court and said that it had "the

authority to discharge a jury from giving any verdict, whenever, in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." This Court thinks this is the constitutional test which it is called upon to apply to the declaration of a mistrial by Mr. Justice Beldock, the trial judge presiding at the first trial of the petitioner herein.

Petitioner apparently does not dispute this but merely argues that the word "must" in § 310.80 means that the New York State legislature removed all discretion from the trial judge and mandated under the circumstances in this case that the trial court "must direct the jury to resume its deliberation" and the trial court, having failed to adhere to such mandate, that a retrial is barred by the double jeopardy clause. In other words, the statute removed the "manifest necessity" and "ends of public justice" considerations and the discretion of the trial judge.

The difficulty with petitioner's position, however, is that State Supreme Court Justice Beldock and the Appellate Division for the Second Department apparently disagree since they appear to have held that § 310.80 does not remove all discretion from the trial judge and does not mandate that a jury must be returned for further deliberations in every case regardless of the circumstances. Respondents suggest that this is entirely proper and consistent with § 310.60[1][a] of the New York Criminal Procedure Law, which permits a trial court to discharge a jury which "has deliberated for an extensive period of time without agreeing upon a verdict with respect to any of the charges submitted and [where] the court is satisfied that any such agreement is unlikely within a reasonable time" and with the requirement of the New York law that "if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment." (McKinney's Consolidated Laws of N.Y., Book 1, Statute § 98, *People v. Martell*, 16 N.Y.2d 245, 264 N.Y.S.2d 913, 212 N.E.2d 433 (1965).

In this particular case, this Court cannot reach any different conclusion, since under such circumstances petitioner is merely asking this Court to overrule the New York State Courts' interpretation of §§ 310.80 and 310.60 of the New York Criminal Procedure Law which this Court declines to do.

Moreover, even if this Court were to construe such sections differently and hold that section 310.80 requires a trial court "[to] direct the jury to resume its deliberation" where, as here, a jury has answered a jury poll in the negative, even though the jury has deliberated for an extensive period of time without agreeing upon a verdict and the court is satisfied that any such agreement is unlikely within a reasonable time, this Court is not prepared to say that a statute, such as this, requires a trial court to direct either a wrongful or a useless act. In the case at bar, juror number eight, Miss Ferguson, had been brow beaten and badgered in a "personal, very vicious" attack by her fellow jurors to the point where, in tears, she "sarcastically" agreed to go along with the majority. A direction by a court to Miss Ferguson and her fellow jurors to return for further deliberations under such circumstances would have been tantamount to a direction to Miss Ferguson to change her honest verdict and to go along with the majority, i. e., a directed verdict.

As the court pointed out to petitioner's counsel on the oral argument of this motion, "if the shoe had been on the other foot" with the jury voting eleven to one for conviction and the jury had been directed to resume its deliberations and thereafter returned with a verdict of "guilty", petitioner would have justifiably claimed "foul".

Finally, it should be pointed out that in the case at bar when the trial court suggested at defense counsel's insistence that the jury return for further deliberations, it was the foreman and one of the other jurors who refused and requested the court to poll the jury to determine whether, in their opinion, such action would serve any useful purpose. It was only after receiving a negative response to such inquiry on a poll of each of the jurors that the trial court de-

clared a mistrial and discharged the jurors. Thus, the New York Courts may well also have determined, as a factual matter, that § 310.60 of the New York Criminal Procedure Law had been fully complied with in the case at bar and that as a matter of law it was controlling when found to be in direct conflict with § 310.80.

Needless to say in light of the above there is no merit to petitioner's claim of abuse of discretion by the trial court.

Under all of the foregoing circumstances, the Court does not believe that petitioner has presented sufficient facts and circumstances to warrant the issuance of a stay of a retrial in this case nor has he presented sufficient facts and circumstances to sustain his claims of violation of due process and his right not to be twice put in jeopardy for the same offense under the Fifth Amendment to the United States Constitution and accordingly his applications for a stay and for a writ of habeas corpus must be, and the same hereby are, denied.

SO ORDERED.