■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL PICKETT, Appellant. — Judgment, Supreme Court, New York County (Dennis Edwards, Jr., J.), rendered April 6, 1981, convicting defendant, on jury verdict, of robbery in the first degree (Penal Law, § 160.15) and other crimes, and sentencing him thereon, is reversed, on the law, and a new trial is ordered. The evidence, while sufficient to sustain the jury verdict that the defendant was guilty of robbery rather than merely larceny by swindling, was by no means overwhelming. The jury having brought in a verdict of guilty, the jury was polled at defendant's attorney's request. With respect to one of the jurors, the minutes reflect the following on the polling: "COURT CLERK: Mary White, are those your verdicts? MISS WHITE: Yes. COURT CLERK: Mary — MISS WHITE: Yes, under duress, I'm saying yes. MR. PERLMUTTER: Your Honor, may we approach? THE COURT: No. Are they your verdicts, yes or no? MISS WHITE: Yes." After the polling was completed, and the verdict entered, there was an off-the-record discussion between the court and counsel, after which the court excused the jury and defendant's attorney then amplified the record to show that he had requested the court to hold a hearing or question the juror to make a determination as to what the duress consisted of. The court stated that the jurors had been instructed at the *voir dire,* in summations and in the charge, of their duty to deliberate and exchange views and to adhere to their views after believing they are right, and after discussion with the other jurors. Accordingly, the court said he found no basis to conduct any hearing or make any further inquiry with respect to the polling of the jury. The purpose of polling the jury is to make sure that the verdict does indeed express the voluntary verdict of that particular juror. When a juror gives an equivocal response on being polled, the Trial Judge is obviously in the best position to determine whether what is being expressed is merely the reluctance of one human being to condemn another, or whether indeed the verdict is not the verdict of that juror. Here immediately after the juror said "under duress," the court said "Are they your verdicts, yes or no?". From this the juror might well have thought that the court was not interested whether the verdict was under duress or not. And the inference we draw from the transcript is that the Judge was not making a judgment of fact from the juror's demeanor, etc., that the verdict did indeed represent the voluntary verdict of that juror. No doubt the juror was not using the word "duress" in any technical legal sense; but at least the word "duress" does carry the connotation that the verdict is not voluntary and unforced by circumstances unrelated to the merits. While the Judge was properly conscious of his duty not to invade the privacy of jury deliberations, he still should have done something to satisfy himself that the verdict was the individual voluntary verdict of that juror. Perhaps the safest course would have been to follow the procedure specified in CPL 310.80: "If upon either the collective or the separate inquiry any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation." Or alternatively, in the exercise of discretion, the Judge might have exercised his discretion to the extent of giving the juror an opportunity to elucidate briefly what she meant by the statement "under duress" or by the

court reinstructing the juror on her duty to render a verdict that represented her own voluntary views after discussion with the other jurors, and then asking her whether that was her verdict. The court should not have merely required the juror, without further inquiry, explanation or deliberation to answer "yes or no." Accordingly, we reverse the judgment and direct a new trial. Concur — Sullivan and Silverman, JJ. Carro, J., concurs in a separate memorandum, and Sandler, J. P., concurs in the memorandum decision of this court as well as in the concurring memorandum of Carro, J., and Bloom, J., dissents in a memorandum, all as follows:

Carro, J. (concurring). While I am in agreement with the court's judgment and opinion in this case, I believe it is helpful however, in light of the dissent, to examine the present state of the law on this issue. The Court of Appeals has not really had the opportunity to discuss the duties and discretion of the trial court when, upon a polling of the jury pursuant to CPL 310.80,[1] a juror responds in the affirmative, but "under duress." (Compare *Matter of Oliver v Justices of N. Y. Supreme Ct. of N. Y. County,* 36 NY2d 53, affg 44 AD2d 823 [on CPL 310.70 grounds].) The United States District Court for the Eastern District of New York in *United States ex rel. Blades v Beldock* (459 F Supp 985 [Platt, J.]) considered the similar circumstances where petitioner sought a writ of habeas corpus and a stay of retrial in Kings County on criminal charges, on the ground of double jeopardy. After extended deliberations and two "modified Allen charges" the jury came in with a verdict of not guilty on all counts. Juror number eight shook her head during the foreman's announcement, causing the prosecutor to request the jury to be polled pursuant to CPL 310.80. Juror number eight claimed she "had been brow beaten and badgered in a 'personal, very vicious' attack by her fellow jurors to the point where, in tears, she 'sarcastically' agreed to go along with the majority." (*Supra,* at p 988.) The jury insisted that further deliberations would be useless, asserting they were unable to arrive at a unanimous verdict. The District Court found that the trial court properly exercised its discretion under these circumstances by dismissing the jury and declaring a mistrial, both under the "manifest necessity" standard of *United States v Perez* (9 Wheat [22 US] 579) and its progeny, and under CPL 310.60. Thus, a retrial was not barred by the double jeopardy clause of the Fifth Amendment. Judge Platt reasoned that CPL 310.80, which states that a trial court "must direct [a] jury to resume its deliberation", does not vitiate its discretion, i.e., the trial court retains discretion to dismiss the jury when extended deliberation fails to produce a unanimous verdict and the court is satisfied such a verdict is unlikely within a reasonable period. Several other Federal courts have considered the issue under subdivision (d) of rule 31 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix),[2] which parallels the New York rule. In *United States v Lawrence* (618 F2d 986), upon a poll of the jury, one juror could not declare "guilty" or "not guilty" because of

---

1. CPL 310.80 states: "Recording and checking of verdict and polling of jury. After a verdict has been rendered, it must be recorded on the minutes and read to the jury, and the jurors must be collectively asked whether such is their verdict. Even though no juror makes any declaration in the negative, the jury must, if either party makes ·such an application, be polled and each juror separately asked whether the verdict announced by the foreman is in all respects his verdict. If upon either the collective or the separate inquiry any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation. If no disagreement is expressed, the jury must be discharged from the case, except as otherwise provided in sections 125.30 and 125.35 of the penal law."

2. Subdivision (d) of rule 31 states: "Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

religious convictions, but agreed that the Government had proven the elements of the crime beyond a reasonable doubt. The Second Circuit affirmed the conviction and found (p 988): "Provided that it is clear that the juror is convinced beyond a reasonable doubt, 'the exact words expressed by a juror are not material,' *Jackson v. Howard,* 403 F.Supp. 107, 109 (W.D.Pa.1975), *aff'd without opinion,* 547 F.2d 1161 (3d Cir. 1977), *cert. denied,* 430 U.S. 957, 97 S.Ct. 1601, 51 L.Ed.2d 808 (1977)". Further, the court noted (p 988) that, while it may have been more appropriate for the Trial Judge to substitute an alternate when the problem became apparent, "[i]t was entirely proper for the trial judge to examine juror number 2 in open court * * * He was able speedily to clear up all doubts as to the juror's state of mind". Thus, it was within the trial court's discretion to question a juror in open court. (See, also, *Williams v United States,* 419 F2d 740.) The Tenth Circuit discussed other discretionary powers in *United States v Morris* (612 F2d 483, 489 [revd and remanded for new trial]) holding that: "the trial judge is vested with discretion under the Federal rule] to direct the jury to retire for further deliberations or to discharge the jury * * * the [implied] power to repoll the jury is also among the judge's discretionary powers." Indeed, it was held to be prejudicial error for the trial court to refuse remedial action in this case. The trial court has the affirmative duty to insure the defendant's right to a valid verdict. As the court stated in *Morris* (*supra,* p 489) "upon the appearance of any uncertainty or contingency in a jury's verdict, it is the *duty* of the trial judge to resolve that doubt" (emphasis added). Both the Federal and the New York rules seek to insure unanimity in the jury's verdict as guaranteed by the Sixth Amendment, as well as proof beyond a reasonable doubt. The Fifth Circuit explained in *Posey v United States* (416 F2d 545, 554 [affg conviction], cert den 397 US 946, reh den 397 US 1031) that the object of a jury poll is to " 'ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced' ". (Citing to *Humphries v District of Columbia,* 174 US 190.) In *Morris* (*supra,* at p 490), the court announced the test for a valid verdict: "[W]hether it '* * * was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.' " (Quoting *Cook v United States,* 379 F2d 966, 968.) This test is in accord with that used by the Second Department, requiring a finding that "all of the jurors unequivocally expressed their assent" (*People v Gottlieb,* 44 AD2d 587, revd on other grounds 36 NY2d 629). In the case at bar, when Mary White responded, "Yes, under duress", her response could not be characterized as "certain, unqualified and unambiguous". This qualification cast doubt upon the validity of the verdict and invoked the trial court's duty to take some remedial action. It may be that the Judge could have simply reminded the juror of her responsibility to render a verdict consistent with her conscience, or that she may not vote guilty unless she believed defendant's guilt had been established beyond a reasonable doubt. It was within the court's discretion to return the jury for further deliberation, question the jury individually, repoll the jury or dismiss them, as the circumstances warranted. But the court's merely asking the juror, "[a]re they your verdicts, yes or no?" seems to have let the matter stand such that we are not able to say whether she was rendering her verdict "under duress" or not. Finally, I am of the opinion that the dissent incorrectly distinguishes *People v Garvin* (90 AD2d 682). While in that case the juror's comment clearly inverted the reasonable doubt standard, it is not clear here that Mary White was convinced of Earl Pickett's guilt beyond a reasonable doubt. Furthermore, both unanimity of the verdict and the finding of guilty beyond a reasonable doubt are equally at risk when a juror expresses uncertainty (which is not based on a momentary confusion; see

*People v Crandall,* 53 AD2d 956; *People v Farrell,* 66 AD2d 718). I therefore concur in the judgment reversing the conviction and remanding for new trial.

Bloom, J. (dissenting). Defendant was convicted of robbery in the first degree, criminal possession of a firearm in the first degree and fraudulent accosting. Upon the return of the verdict the defendant's attorney requested that the jury be polled. During the polling the following took place: Clerk: "Mary White, are those your verdicts?" Mary White: "Yes, under duress, I'm saying yes". Defense counsel: "Your Honor, may we approach?" The court: "No. Are those your verdicts, yes or no?" Mary White: "Yes". After completion of the polling of the jury a sidebar conference was held at which defense counsel urged that the court make inquiry of the jurors to determine what the duress consisted of. The court refused indicating that to do so would invade the privacy of the jury room. We are now called upon to determine whether acceptance of the verdict by the court under those circumstances constituted error. There are four cases in this State which, to my knowledge, have dealt with the matter. The first was *People v Gottlieb* (44 AD2d 587). Two issues were passed upon. The first was whether an application for a certificate of occupancy was an "instrument" within the meaning of section 175.35 of the Penal Law which makes it a crime to offer a false instrument for filing; the second involved much the same situation as that here presented. There, when the jury was polled two jurors responded evasively as to whether the verdicts announced were their verdicts. Juror number 7 answered " 'Guilty with reservations' " while juror number 12 answered " 'Yes, with a question as to intent to defraud' " (p 590). Without further instructions and without leaving the jury box the jury was immediately repolled and all indicated their assent to the verdict. Our brethren in the Second Department affirmed the conviction by a vote of four to one. The Court of Appeals reversed (36 NY2d 629). However, it did so solely on the ground that the application for a certificate of occupancy was not an "instrument" within the meaning of section 175.35 of the Penal Law. The court did not reach the question of the propriety of accepting the verdict. Next in line was a Third Department case, *People v Crandall* (53 AD2d 956). Among the several issues before the court was one dealing with the verdict. Upon the polling of the jury as to one of the counts, one of the jurors answered "no" in response to the question "Is that your verdict". The court commented on the lateness of the hour and asked the juror whether he misunderstood. After the juror answered in the affirmative the jury was repolled and all answered "yes". The conviction was affirmed. Following *Crandall* came our decision in *People v Farrell* (66 AD2d 718). There, after the verdicts had been returned, the jury was polled. The forewoman was the first to be asked whether the verdicts on both counts of robbery in the second degree were her verdicts. She responded: "Yes — what do you mean? I'd like to explain Actually, I didn't understand the whole thing but * * * The Court: It's a very simple thing. Do you believe that the defendant is guilty of robbery, in the second degree? Forewoman: Well, according to some of the charges, yes. But not quite * * * The Court: You have to sit now and think and tell me yes or no. I'll read it * * * Forewoman: Guilty. The Court: Guilty, thank you". Pursuant to a request by defense counsel there was further colloquy between the court and the forelady. We held (p 718) that "while it might have been preferable, when the possibility of a doubt in the juror's mind was indicated, to send the jury back into session for a resolution of the doubt, in the totality of the circumstances demonstrated by a reading of the transcript with regard to the jury's determination and the polling of the jury, there could be no real question with respect to the determination of guilt". The final case in the quartet is a Fourth Department holding, *People v Garvin* (90 AD2d 682). In that case, when

the jury was polled one juror replied (p 683) that his verdict " 'was with reasonable doubt'." The trial court indicated that it did not know what the response meant and asked if that was his verdict to which the juror answered (p 683) " 'That's what I gave, yes' ". Although defense counsel asked for a clarification of the juror's vote the trial court refused to inquire further and accepted the verdict. The Appellate Division reversed the conviction noting (p 683) that "The juror's response that he found guilt 'with reasonable doubt' is in direct contradiction to the standard required to be applied in a criminal case". Authorities from other jurisdictions are collated and discussed in 25 ALR3d 1149. The note is indicative of no consensus as to what the general rule is. While I agree with the majority that the problems here posed could readily have been obviated by reinstructing the jury as to their duties and sending them back for further deliberations and, indeed, given the closeness of the case — a circumstance which probably gave rise to the answer of juror White — would have been the better practice, I cannot say that the failure to do so was error of such dimension as to require a retrial. The authorities in this jurisdiction with the exception of *Garvin,* are to the contrary and *Garvin,* in light of the failure to clarify the patently defective verdict, clearly warranted reversal. Until such time as we are instructed otherwise by the Court of Appeals, I incline to the view that we are bound by our own decision in *Farrell* and by the persuasive authority of *Gottlieb* (at App Div) and *Crandall.* Accordingly, I would affirm.