■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JULIO ORTIZ, Respondent. [672 NYS2d 327] —Order, Supreme Court, Bronx County (Dominic Massaro, J.), entered October 7, 1997, which granted defendant's motion pursuant to CPL 330.30 to set aside a jury verdict rendered March 13, 1997, finding him guilty of robbery in the first degree, unanimously reversed, on the law, the jury verdict reinstated, and the matter remanded for sentencing.

The trial court erred in holding that its evidentiary ruling at trial, precluding proposed cross-examination of prosecution witness Omer Hodzic regarding inconsistent statements or omissions of material facts, was error of a type that required reversal as a matter of law.

At trial, the testimony of the victims, Esperanza Bautista and her sister Juana Bautista, established that at approximately 8:30 A.M. on October 29, 1994, after hearing a knock on

the door of their apartment, Esperanza looked through the peep hole and saw two men standing outside the door, one light-skinned and the other dark-skinned, dressed to look like police. The light-skinned man displayed a police badge and told her to open the door because they were looking for someone named Gonzalez. When she opened the door, the light-skinned man pushed his way in, pointed a gun at her and demanded "the money and the drugs". The light-skinned man hit Esperanza with his gun and threatened to kill her if she did not find the money. The victims were tied up and their heads were covered, and the apartment was ransacked. The victims later determined that jewelry and cash were taken.

Although neither sister was able to identify the robbers, their testimony dovetailed with that of Omer Hodzic, the building superintendent, who observed the portion of the events occurring outside the apartment, and was able to positively identify defendant. Specifically, Hodzic testified that his apartment, like that of the victims, is on the second floor of the building. It was established through the use of photographs that Hodzic's door was on the same side of the hall and one door (10 to 15 feet) to the right of the victims' apartment. Hodzic stated that he saw a dark-skinned man and defendant, whom he described as light-skinned, get out of a white car parked in front of the building and enter the building's vestibule. Hodzic returned to his apartment for a moment, and when he left his apartment he saw defendant standing in front of the door to the victims' apartment and saw the dark-skinned man coming up the stairs.

Hodzic became suspicious and went back to his apartment a second time. Through the peep hole he saw defendant knock on the victims' door and hold up his hand with his palm facing the door; he then heard defendant say "[P]olice". Hodzic stated at trial that he then left to answer his telephone but quickly ended the conversation and resumed looking out of the peep hole in his door. In response to specific questioning from the prosecutor and the court, Hodzic stated that he saw defendant enter the apartment. Because he felt something was going to happen, he went straight to his window and took down the license plate of the white car—which was ultimately found to be registered to defendant. He then went downstairs to double check the license plate number and again encountered defendant, who was leaving the building as Hodzic re-entered. Hodzic also saw the dark-skinned man. According to Hodzic, the dark-skinned man was coming down the steps from the second floor, but reversed direction and walked up the stairs to an upper floor when he saw Hodzic.

Following his conviction at trial, defendant moved to set aside the verdict pursuant to CPL 330.30, contending that the court improperly prohibited defense counsel from impeaching Hodzic based upon two different prior statements. In one, made to police shortly after the crime, he apparently failed to state that he saw defendant enter the apartment; in the other, testimony given before the Grand Jury, Hodzic was asked if he saw the victims' door open and he responded "I didn't see the door open because right at that moment when he put up his hand and said; police, I went to answer my phone."

With respect to the statement made by Hodzic to the police, "a witness may not be impeached simply by showing that he omitted to state a fact, or to state it more fully at a prior time. It need also be shown that at the prior time the witness' attention was called to the matter and that he was specifically asked about the facts embraced in the question propounded at trial." (*People v Bornholdt*, 33 NY2d 75, 88, *cert denied sub nom. Victory v New York*, 416 US 905.)

Therefore, there is no merit to that branch of defendant's argument based upon the absence of any statement by Hodzic to investigating officers that he saw defendant enter the apartment. The cross-examination sought by defense counsel with respect to this omission was based entirely upon the fact that the statement did not appear in the investigating officer's memo book or report. There was no basis upon which it could have been shown that the officer who questioned Hodzic specifically asked him whether he saw defendant enter the apartment, and therefore it was not error to preclude impeachment based upon the omission (*see, People v Brown*, 235 AD2d 303, *lv denied* 89 NY2d 1032).

As to defendant's claim that he was improperly precluded from impeaching Hodzic with his Grand Jury testimony, in which Hodzic more specifically stated "I didn't see the door open because right at that moment when he put up his hand and said; police, I went to answer my phone", it was not adequately preserved. In raising the issue of impeaching Hodzic with his Grand Jury testimony, defense counsel read the portion of his Grand Jury testimony in which Hodzic stated he went downstairs after receiving the telephone call. The prosecutor objected and an off-the-record discussion ensued. It cannot be inferred from the unknown contents of that discussion, or from the subsequent questions propounded by defense counsel, that the defense specifically argued that he was improperly foreclosed from cross-examining Hodzic as to that portion of his Grand Jury testimony in which he stated that he

did not see the door to the victims' apartment open. At no time in the trial did defense counsel attempt to read from the portion of the Grand Jury testimony later relied upon in the CPL 330.30 motion, which contains Hodzic's prior inconsistent statement that he did not see the door to the victims' apartment open.

The "basis for vacating a jury verdict prior to sentencing is strictly circumscribed by CPL 330.30" to allow vacatur only if reversal would have been *mandated* on appeal as a matter of law (*People v D'Alessandro*, 184 AD2d 114, 117, *lv denied* 81 NY2d 884). Because defendant failed to adequately preserve the challenge to the court's ruling precluding impeachment of Hodzic with his prior inconsistent statement before the Grand Jury, reversal clearly was not mandated.

Furthermore, even if the error were addressed on the merits, the proposed impeachment evidence was not so fundamental that it would have outweighed or neutralized Hodzic's other testimony or that of the victims. Hodzic's testimony placed defendant outside the victims' door after Hodzic's suspicions were aroused by the behavior of defendant and his cohort, and by the fact that Hodzic did not recognize either man as building residents. Hodzic observed defendant raise his hand and identify himself as a police officer in the same manner as described by Esperanza Bautista. While introduction of the prior Grand Jury statement would have undercut Hodzic's statement at trial that he saw defendant enter the apartment, it would have had little impact on his identification testimony or the testimony placing defendant at the scene, including the presence of defendant's car outside the building. Together with the victims' testimony, Hodzic's testimony led unavoidably to the conclusion that defendant was the light-skinned perpetrator. There was no reasonable possibility that the preclusion of Hodzic's cross-examination regarding the prior Grand Jury testimony might have contributed to defendant's conviction, and the error was harmless beyond a reasonable doubt (*People v Crimmins*, 36 NY2d 230, 237).

Moreover, defense counsel extensively cross-examined Hodzic with respect to his several encounters with defendant, as well as with respect to whether he actually saw, or even could have seen, defendant enter the apartment, given the relative location of the apartment doors. Thus, it cannot be said that defendant's right of confrontation was abridged by the error. Concur—Milonas, J. P., Rosenberger, Nardelli, Tom and Saxe, JJ.