[921 NE2d 582, 893 NYS2d 815]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EVERTON D. SIMMS, Respondent.

Argued October 15, 2009; decided December 1, 2009

## APPEARANCES OF COUNSEL

*Charles J. Hynes, District Attorney*, Brooklyn (*Lori Glickman* and *Leonard Joblove* of counsel), for appellant.

*Warren S. Landau*, New York City, and *Lynn W.L. Fahey* for respondent.

## OPINION OF THE COURT

Memorandum.

The order of the Appellate Division should be affirmed.

After deliberating about 4½ hours, the jury in this case rendered its verdict, finding defendant Everton D. Simms guilty of two counts of first-degree robbery (Penal Law § 160.15 [4]). At defense counsel's behest, the jurors were asked by the court clerk to declare individually whether the guilty verdict announced through the foreperson was their verdict in all respects. The first nine jurors answered "Yes," while juror number 10 replied, "Well, it is my verdict, although I feel like I was pressured to make that decision." As the clerk moved on with the poll, juror number 10 volunteered, "It is my verdict." The trial judge then interjected, "That is your verdict; is that correct?" and juror number 10 replied, "Yes."

Once the jury poll was completed, with the remaining two jurors answering "Yes," defense counsel sought a conference, which took place in the private walkway behind the courtroom. He moved for a mistrial on the basis of what juror number 10 said. The trial judge replied that he would ask juror number 10, outside the presence of the other jurors, "what . . . she mean[t] by pressure, was there pressure inside the [jury] room or outside the [jury] room." Defense counsel wanted juror number 10 pushed to explain why she felt pressured because otherwise "we [would] still know no more than what we know right now." The judge rejected this notion, explaining that he would not "invade the sanctity of the jury deliberation process," and "[t]hat is the whole system, that we don't know what goes on in [the jury room]."

Upon returning to the courtroom, the trial judge sent all of the jurors except juror number 10 back to the jury room. He then told juror number 10 that he "underst[ood], in summary," that she had said "two things . . . [o]n one hand you said that is your verdict, and you also said you were pressured, is that a fair summary?" Juror number 10 agreed that it was. The judge then asked her what she "mean[t] by the word pressure in this context." Juror number 10 replied, "Well, I believe that it was pure chaos in there. Everyone was speaking at the same time."

The trial judge then cautioned juror number 10 that he had "conflicting duties," one of which was "to preserve the sanctity of the jury deliberation[s]." As a result, he "really [felt] restricted," could not "go into that [jury] room, intellectually," and was "really hesitant to cross that boundary." Juror number 10 acknowledged that she understood, and the judge continued the inquiry:

"THE COURT: Thank you.

"So I return to you and I simply ask you if you can tell me what did you mean by the word pressure in this context?

"JUROR NUMBER TEN: Well, I meant pressured by the fact that everyone is standing up, yelling at me, why can't you see it that way, why can't you see it that way? Everyone is yelling like that. After eight hours of that you have to give in.

"THE COURT: All right. Now I want to ask you something: When you use the word pressure, based on what you're saying, I understand you to mean what occurred inside the jury room, am I correct?

"JUROR NUMBER TEN: Uh-huh. Yes.

"THE COURT: Thank you. You in no manner mean anything that happened outside the jury room; is that correct?

"JUROR NUMBER TEN: That's correct.

"THE COURT: It had nothing to do with having to go home to attend to personal obligations?

"JUROR NUMBER TEN: No.

"THE COURT: It had nothing to do with going to

employment or attend[ing] to employment obliga-
tions?

"JUROR NUMBER TEN: No, it has nothing to do with
it.

"THE COURT: So if there was any pressure, it was
pressure that was exerted inside the jury room; is
that correct?

"JUROR NUMBER TEN: Uh-huh. Yes."

After juror number 10 was excused from the courtroom,
defense counsel again sought a mistrial, arguing that this juror
"simply gave in without believing in the defendant's guilt, but
gave in after being badgered for eight hours. Those were her
words. She had no other choice but to give in." Counsel added
that juror number 10's statements that she "felt pressured"
and "had to give in" were "not her finding [defendant] guilty.
That is her giving in. That is not 12 people unanimously finding
[defendant] guilty." The prosecutor countered that juror
number 10 "made it perfectly clear that the pressure she felt
was inside the jury room," and "she said three times it was her
verdict."

The trial judge subsequently directed the full jury to be
brought back into the courtroom, and accepted the guilty
verdict. After the jury was dismissed, defense counsel renewed
his motion for a mistrial, pointing out that juror number 10
"never said she believed in [defendant's] guilt," and instead
"indicated that she felt pressured and gave in and simply
acquiesced to others." Before sentencing, defense counsel moved
pursuant to CPL 330.30 to set aside the verdict. He argued that
juror number 10 never unequivocally assented to the verdict,
and the court's questioning failed to establish its voluntariness.

The trial judge denied the motion, determining that, pursu-
ant to CPL 330.30 (1), he did not possess jurisdiction to set
aside the verdict because defendant had not preserved his claim
for appellate review (2006 NY Slip Op 30598[U]). The judge
opined that, in any event, the claim lacked merit because he
had followed the procedure set out in *People v Pickett* (61 NY2d
773 [1984]) for conducting an inquiry under the circumstances
presented. The trial judge subsequently sentenced defendant to
concurrent terms of imprisonment of nine years, plus five years
of postrelease supervision.

█ When defendant appealed his judgment of conviction and
sentence, the Appellate Division, with one Justice dissenting,

reversed on the law and ordered a new trial on the ground that the trial judge's inquiry did not establish that juror number 10 agreed with the verdict. A Judge of this Court subsequently granted the People leave to appeal. We now conclude that defendant's claim was preserved, and affirm the Appellate Division's order.

CPL 310.80 provides that when jurors are individually polled, if any juror answers that the verdict is not his, the court must refuse to accept the verdict and direct the jury to resume deliberations. Where no disagreement is expressed, the verdict must be accepted and the jury discharged. Here, juror number 10's response—"[w]ell it is my verdict, although I feel like I was pressured to make that decision"—was unsure enough to require the trial judge to inquire further, as he did (see People v Mercado, 91 NY2d 960, 963 [1998] ["(e)ven in the absence of an outright negative declaration, a juror's response during polling may engender doubts about a full verdict and we have recognized the responsibility of a court to resolve any uncertainties"]).

■ While the trial judge established that there was no pressure exerted on juror number 10 emanating from outside the jury room, he did not clear up whether there was "duress [arising] out of matters extraneous to the jury's deliberations or not properly within their scope, although perhaps occurring within the jury room" (Pickett, 61 NY2d at 775). Trial judges may not "violat[e] the secrecy of the jury deliberations" (id. at 774), but they must insure that a verdict is not the product of actual or threatened physical harm. Further, the trial judge never dispelled the ambiguity created by juror number 10's multiple responses during the jury poll by simply asking her, for example, whether she found defendant guilty beyond a reasonable doubt based on the evidence.

SMITH, J. (concurring). I agree that juror number ten's equivocal response to the question "[I]s that your verdict?" called for further inquiry, but I think the juror's answer to that inquiry was enough to resolve the problem. The juror made clear that what she meant by "pressure" was no more than vigorous argument: "[E]veryone is standing up, yelling at me, why can't you see it that way, why can't you see it that way?" It is obvious to me that this juror was not coerced—certainly not in the sense of being subjected to a threat of "physical harm" (majority mem at 871)—but simply decided to give in to the strongly-expressed views of her fellow jurors. That is not enough to taint a verdict.

I cannot endorse the majority's suggestion that the juror should have been asked: "Did you find the defendant guilty beyond a reasonable doubt based on the evidence?" Admittedly, this is only a small step beyond the traditional question "[I]s that your verdict?"—a question to which the juror answered yes several times—but I would not take that step. It is an inquiry into the operation of the juror's mind, and if the juror did not confine herself to a yes or no answer it might well elicit information better kept private.

Nevertheless, I concur in the result reached by the majority, because Supreme Court erred (as the People acknowledge) in forbidding attorney-client communications during a weekend break. I am satisfied that defendant adequately preserved this error.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur; Judge SMITH concurs in result in an opinion.

Order affirmed in a memorandum.