People v Ramunni (2022 NY Slip Op 02022)





People v Ramunni


2022 NY Slip Op 02022


Decided on March 23, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
REINALDO E. RIVERA
ROBERT J. MILLER
DEBORAH A. DOWLING, JJ.


2017-06773
 (Ind. No. 310/15)

[*1]The People of the State of New York, respondent,
v
Michelle Ramunni, appellant.


Patricia Pazner, New York, NY (Benjamin Welikson of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island, NY (Morrie I. Kleinbart and Thomas B. Litsky of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Wayne M. Ozzi, J.), rendered June 8, 2017, convicting her of gang assault in the first degree, assault in the first degree, and assault in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, count 10 of the indictment charging the defendant with assault in the second degree is dismissed, and the matter is remitted to the Supreme Court, Richmond County, for a new trial on the counts of the indictment charging the defendant with gang assault in the first degree and assault in the first degree.
The defendant was involved in a brawl that took place on a sidewalk in Staten Island on November 2, 2015, during which complainant one was stabbed in the face and hit in the head with a hatchet or "slag hammer," and complainant two was punched in the head and hit with a stun gun. At trial, complainant one identified the defendant as the person who had hit him in the head with the slag hammer, and complainant two testified that he had been hit with a stun gun by an unknown individual. Following the jury trial, the defendant was convicted of gang assault in the first degree and assault in the first degree for the injuries suffered by complainant one as a result of being hit in the head with the slag hammer, and assault in the second degree under an acting-in-concert theory for the injuries suffered by complainant two as a result of being hit with a stun gun.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was not legally sufficient to establish the defendant's guilt of assault in the second degree beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349). Although the defendant was present at the scene at the time complainant two was hit with a stun gun by an unknown individual, the evidence failed to establish that the defendant shared a community of purpose with that unknown individual (see People v Nelson, 178 AD3d 1395, 1396; People v Fonerin, 159 AD3d 717, 719).
However, the defendant's legal sufficiency contentions are without merit with respect to her convictions of gang assault in the first degree and assault in the first degree. Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of those crimes beyond a reasonable [*2]doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt as to those crimes was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
Nonetheless, the judgment of conviction with respect to the counts charging the defendant with gang assault in the first degree and assault in the first degree must be reversed, and a new trial on those counts ordered.
The defendant was deprived of due process by the People's suppression of favorable evidence in violation of Brady v Maryland (373 US 83, 87). "The People, in their role as truth-seekers in criminal trials, have a 'broad obligation to disclose exculpatory evidence,' but a mere breach of this duty does not offend the defendant's due process rights unless all the 'components of a true Brady violation' are established" (People v Garrett, 23 NY3d 878, 884-885, quoting Strickler v Greene, 527 US 263, 281). In People v Rong He (34 NY3d 956), the Court of Appeals made clear that the People's "'broad obligation' of disclosure under Brady" includes "meaningful access to favorable witnesses" (id. at 958, quoting Strickler v Greene, 527 US at 281). "To make out a successful Brady claim, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v McGhee, 36 NY3d 1063, 1064-1065 [internal quotation marks omitted]; see People v Rong He, 34 NY3d at 958).
Here, a 911 caller who witnessed the brawl told a detective during an interview on the night of the incident that the defendant, whom the caller identified by name, had walked toward the sidewalk where the incident took place before the "violent fight started," and that "the person who had the hatchet was . . . wearing a Black tee shirt ad [sic] blue jeans." This caller's description of the individual who "had the hatchet" did not match the defendant, and therefore, access to the caller who made this statement was favorable to the defense (see People v Garrett, 23 NY3d at 886; People v Wade, 166 AD3d 912, 912). Although the People disclosed this caller's statement, they failed to provide the defendant with meaningful access to the caller by redacting the caller's identity and contact information and thereafter denying the defendant's request for this caller's identity (see People v Rong He, 34 NY3d at 958-959). While the contents of the 911 call may have provided some clues as to the identity of the caller, the defendant should not be forced to guess as to the identity of this caller. In addition, we are satisfied that there was a reasonable possibility that disclosure of the caller's identity and contact information would have led to evidence that would have changed the result of the proceedings (see People v Giuca, 33 NY3d 462, 473).
The Supreme Court deprived the defendant of a fair trial by precluding defense counsel from questioning a police witness regarding an omission in a police report of the witness's interview with complainant one in the hospital after the incident, which omission contradicted the testimony of complainant one at trial. Complainant one testified at trial that he told the police witness that the defendant "[s]plit my head open" with "a big cutting device." The report prepared by the police witness contained no such identification, and stated instead that complainant one "believes he would be able to identify the persons responsible for attacking him." Under these circumstances, the court erred in precluding defense counsel from questioning the police witness about the contents of the report and the alleged prior inconsistent statement of complainant one (see People v Greene, 110 AD3d 827, 829; People v Mullings, 83 AD3d 871, 872; cf. People v Ortiz, 250 AD2d 372, 374). Moreover, the court's error in precluding defense counsel from questioning the police witness as to the alleged prior inconsistent statement of complainant one was not harmless, given the importance of the identification testimony of complainant one and that the proof of the defendant's guilt was not overwhelming (see People v Moore, 193 AD2d 627, 628).
The Supreme Court's acceptance of the verdict in this case after polling the jury also constituted reversible error. "The purpose of polling the jury is to make sure that the verdict does [*3]indeed express the voluntary verdict of that particular juror" (People v Francois, 297 AD2d 750, 751 [internal quotation marks omitted]). "As provided under the Criminal Procedure Law, either party may request polling the jury after a verdict has been rendered and, if 'any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberations'" (People v Mercado, 91 NY2d 960, 962-963, quoting CPL 310.80; see People v Folkes, 173 AD3d 893, 895). "Even in the absence of an outright negative declaration," the Court of Appeals has recognized the court's responsibility "to resolve any uncertainties" where "a juror's response during polling may engender doubts about a full verdict" (People v Mercado, 91 NY2d at 963; see People v Simms, 13 NY3d 867, 871; People v Francois, 297 AD2d at 751).
Here, when the jury was polled and asked if the verdict was theirs, juror number nine stated, "Um, I'm not sure, with some, but most of them, yes." Although the Supreme Court thereafter inquired of juror number nine if the verdict announced to the court was her own, it did so by asking her "is that a yes or a no" in the presence of the remaining jurors, despite evidence before the court suggesting that juror number nine may have succumbed to pressure to vote with the majority even though she did not agree with the verdict as to certain counts. The court's inquiry was therefore not sufficient to resolve the uncertainty of whether the verdict announced to the court was the individual voluntary verdict of juror number nine (see People v Pickett, 92 AD2d 843, 843-844, affd 61 NY2d 773; cf. People v Simms, 13 NY3d at 868; People v Folkes, 173 AD3d at 895; People v Francois, 297 AD2d at 751).
The defendant's remaining contention need not be reached in light of our determination.
BARROS, J.P., RIVERA, MILLER and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court